RECEIVED
SEP 1 5 2014
TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| TECHE SPECIALTY HOSPITAL, L.L.C. | CIVIL ACTION NO. 6:13-1120 |
| VERSUS | JUDGE DOHERTY |
| KATHLEEN SEBELIUS | MAGISTRATE JUDGE HILL |

## MEMORANDUM RULING

Currently pending before the Court are cross-motions for summary judgment, filed by plaintiff Teche Specialty Hospital, L.L.C., d/b/a Iberia Rehabilitation Hospital ("Teche") [Doc. 14], and defendant Kathleen Sebelius, Secretary of Health and Human Services ("Secretary") [Doc. 18]. By way of its motion, plaintiff seeks reversal of a final decision of the Secretary, whereby the Secretary determined Teche was not entitled to Medicare reimbursement for two claims, finding the claims did not satisfy the Medicare coverage criteria for inpatient rehabilitation services. [Doc. 14, pp. 1-2; Doc. 14-1, p.5] Contrarily, defendant seeks a Ruling affirming the Secretary's decision, arguing "[t]he substantial evidence in the administrative record supports the Secretary's decision that it was not reasonable and necessary to furnish rehabilitation services to two Medicare beneficiaries on an inpatient basis." [Doc. 18, p. 1] For the following reasons, plaintiff's motion is GRANTED IN PART, defendant's motion is DENIED, and the decision of the Secretary is VACATED and REMANDED to the court below for further consideration consistent with this opinion.

I.      **Factual and Procedural Background**

The following facts are not in dispute. Teche operates an inpatient rehabilitation facility

("IRF") in New Iberia, Louisiana.[1] On August 27, 2008, Wisconsin Physician Services, Inc. ("WPS") notified Teche of its intent to conduct a post-payment audit of forty claims for Medicare coverage of IRF services provided to multiple beneficiaries in 2007 and 2008.[2] In December 2008, WPS notified Teche it had received an overpayment totaling $309,393.18 for nineteen of the forty claims. Teche appealed the overpayment determination by requesting a redetermination review by WPS. WPS affirmed its prior determination, citing a lack of medical necessity and insufficient documentation to support an IRF level of care. Thereafter, Teche requested a reconsideration review from Maximus Federal Services, Inc. ("Maximus"), a Medicare Qualified Independent Contractor ("QIC"). Maximus affirmed the decision of WPS. Teche then requested a hearing before an administrative law judge for the Medicare Office of Hearings and Appeals. On August 27, 2010, the ALJ issued a decision finding Teche was entitled to payment for seventeen of the nineteen claims reviewed. Teche subsequently requested a review by the Medicare Appeals Council ("MAC") of that portion of the ALJ's ruling which denied the two claims. On March 31, 2013, the MAC issued a decision affirming the ALJ. On May 16, 2013, Tech filed a Complaint in this Court, seeking judicial review and reversal of the MAC's decision finding Teche was not entitled to Medicare reimbursement for two claims for IRF treatment.

## II.     Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] Generally, a rehabilitation hospital is an acute care hospital that serves an inpatient population of whom at least sixty percent require intensive rehabilitation services for treatment of one or more specified conditions. 42 C.F.R. §§ 412.23(b), 412.29.

[2] WPS is a private entity with whom the Centers for Medicare & Medicaid Services ("CMS") contracts to carry out the daily administrative functions of Medicare reimbursement, including claims processing. See 42 U.S.C. §§ 1395h, 1395kk-1.

56(a). As noted by the Fifth Circuit:

> The summary judgment procedure is particularly appropriate in cases in which the court is asked to review or enforce a decision of a federal administrative agency. The explanation for this lies in the relationship between the summary judgment standard of no genuine issue as to any material fact and the nature of judicial review of administrative decisions.... [T]he administrative agency is the fact finder. Judicial review has the function of determining whether the administrative action is consistent with the law—that and no more.

*Girling Health Care, Inc. v. Shalala*, 85 F.3d 211, 214-15 (5th Cir. 1996)(alterations in original)(quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2733 (1983)).

Pursuant to 42 U.S.C. § 1395ff(b), "any individual who is dissatisfied with the Secretary's decision regarding a claim to benefits is entitled to a hearing and to review of the final decision as provided in section [42 U.S.C.] § 405(g)." *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000).[3] Pursuant to Section 405(g), "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive...." *Id.* Thus, the Medicare Act, like the Social Security Act, provides for a "substantial evidence" standard of review. *Id.*; *Estate of Morris* at 745.

A court reviewing a final decision of the Secretary under the standard of review set forth in section 405(g) is limited to two issues: (1) whether the Secretary applied the proper legal standards; and (2) whether the Secretary's decision is supported by substantial evidence on the record as a whole. *Estate of Morris* at 745. "Substantial evidence is "'more than a mere scintilla. It means such

---

[3] The MAC's decision constitutes the final decision of the Secretary. 42 C.F.R. § 405.1130.

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Girling*, 85 F.3d at 215 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Harris v. Apfel*, 209 F.3d 413, 417 (substantial evidence "is more than a mere scintilla and less than a preponderance"). "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris* at 417. In applying the substantial evidence standard, the district court must "scrutinize the record to determine whether such evidence is present," however, it "may not reweigh the evidence, try the issues *de novo*, or substitute [its] judgment for that of the Secretary." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The district court must grant deference "'to the Secretary's interpretation [of the agency's regulation] unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation.'" *Elgin Nursing and Rehabilitation Center v. United States Department of Health and Human Services*, 718 F.3d 488, 491 (5th Cir. 2013) (alterations in original) (quoting *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994)).

### III. Medicare Coverage for In-Patient Rehabilitation Services

"The Medicare program is codified in Title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, which establishes a federally funded health insurance program for the elderly and disabled." *Sid Peterson Memorial Hosp. v. Thompson*, 274 F.3d 301, 303 (5th Cir. 2001). "'Part A' of the Medicare regime authorizes direct payment for covered hospital services to providers of health services." *Id.* (citing 42 U.S.C. §§ 1395c–1395i–4). Teche operates its IRF under Part A of the Medicare program. [Doc. 1, ¶ 5.]

Generally, Medicare does not allow payment under Medicare Part A "[f]or any expenses incurred for items or services . . . which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member." 42 U.S.C. § 1395y(a)(1)(A). Under this authority, Medicare may deny payment when a patient requires services which could have been appropriately provided in a less intensive setting. Medicare Coverage of Inpatient Hosp. Rehab. Servs., 50 Fed.Reg. 31040–01 (July 25, 1985).

The criteria for Medicare coverage of inpatient hospital rehabilitation services prior to January 1, 2010 is set forth in Health Care Financing Administration ("HCFA") Ruling 85–2. *Id.*[4] Under HCFA Ruling 85-2, "A hospital level of care is required by a patient needing rehabilitative services if that patient needs a relatively intense rehabilitation program that requires a multidisciplinary coordinated team approach to upgrade his ability to function." *Id.* Generally, there are two basic requirements which must be met for inpatient hospital stays for rehabilitation care to be covered by Medicare:

1. The services must be reasonable and necessary (in terms of efficacy, duration, frequency, and amount) for the treatment of the patient's condition; and

2. It must be reasonable and necessary to furnish the care on the inpatient hospital basis, rather than in a less intensive facility, such as a SNF [skilled nursing facility], or on an outpatient basis.

*Id.*

Prior to admitting a patient to a rehabilitation hospital, a preadmission screening is typically performed. *Id.* This screening is a preliminary review of the patient's condition and past medical

---

[4]In 2009, CMS adopted new IRF coverage requirements. Medicare Program; Criteria for Medicare Coverage of Inpatient Hospital Rehabilitation Services, 74 Fed.Reg. 54835–01 (Oct. 23, 2009). However, HCFA Ruling 85-2 "continue[s] to apply for all IRF discharges that occur prior to January 1, 2010." *Id.* All parties agree the criteria set forth in HCFA Ruling 85-2 apply to this matter.

records to determine if the patient could significantly benefit from either an intensive hospital program or an extensive inpatient assessment. *Id.* For IRF services to be covered, the screening must show the patient requires all of the following services: (1) close medical supervision by a physician with specialized training or experience in rehabilitation; (2) twenty-four-hour rehabilitation nursing; (3) a relatively intense level of physical therapy or occupational therapy; (4) a multidisciplinary team approach to the delivery of the program; (5) a coordinated program of care; (6) significant practical improvement; (7) realistic goals; and (8) length of rehabilitation program. *Id.*

With regard to the first requirement for treatment in an IRF, CMS has provided the following guidance:

> 1. Close medical supervision by a physician with specialized training or experience in rehabilitation—A patient's condition must require the 24-hour availability of a physician with special training or experience in the field of rehabilitation. This need should be verifiable by entries in the patient's medical record that reflect frequent and direct and medically necessary physician involvement in the patient's care; *i.e.*, at least every 2-3 days during the patient's stay. This degree of physician involvement, which is greater than would normally be rendered to a patient in a SNF, is an indicator of a patient's need for services generally available only in a hospital setting. A SNF patient's care would usually require only the general supervision of a physician, rather than the close supervision which hospital patients need.

*Id.*

With regard to the sixth requirement, CMS has provided the following guidance:

> 6. Significant practical improvement.—Hospitalization after the initial assessment is covered only in those cases where the initial assessment results in a conclusion by the rehabilitation team that a significant practical improvement can be expected in a reasonable period of time. It is not necessary that there be an expectation of complete independence in the activities of daily living, but there must be a reasonable expectation of improvement that will be of practical value to the patient, measured against his condition at the start of the rehabilitation program. . . .

*Id.*, as corrected by 50 FR 32643; *see also* Medicare Benefit Policy Manual (MBPM), Ch.1, § 110.4.6[5]; WPS LCD L19890.[6]

> A local coverage determination (LCD) issued by WPS additionally provides:
>
> Complete independence in the activities of daily living before the patient is discharged from the IRF is not a necessary expectation. Neither is vocational rehabilitation considered a realistic goal. The most realistic rehabilitation goal for most Medicare beneficiaries is self-care or independence in the activities of daily living; i.e., self-sufficiency in bathing, ambulation, eating, dressing, homemaking, etc., or sufficient improvement to allow a patient to live at home with family assistance rather than in an institution. Thus, the aim of the treatment is achieving the maximum level of function possible. (CMS Pub 100-02, Chapter 1, § 110.4.1)

WPS LCD L19890 (emphasis omitted).[7]

Neither the ALJ nor the MAC are bound by LCDs or program guidance in manuals, but they must "give substantial deference to these policies if they are applicable to a particular case." 42 C.F.R. § 405.1062(a). "If an ALJ or MAC declines to follow a policy in a particular case, the ALJ or MAC decision must explain the reasons why the policy was not followed." *Id.* at § 405.1062(b).

## IV.     Analysis

In this matter, the MAC found in pertinent part as follows[8]:

*Beneficiary (#2) L.B.*
*Dates of Service March 12-31, 2008*

The beneficiary resided alone in an assisted living facility and was functionally independent. Subsequent to a March 7, 2008 pelvic fracture, the beneficiary was

---

[5] *See* Doc. 14-3, p.4

[6] *See* Doc. 14-5, p.7

[7] *See* Doc. 14-5, p.7

[8] The MAC reviews the ALJ's decision de novo. 42 C.F.R. § 405.1108(a). However, its review of the ALJ's actions is limited "to those exceptions raised by the party in the request for review. . . ." *Id.* at 405.1112(c).

referred to appellant. The beneficiary's medical history was otherwise significant for anemia, urinary tract infection, congestive heart failure, hypertension, chronic airway obstruction, gastroesophageal reflux and thrombocytopenia.

. . . . [T]he ALJ denied coverage finding that, while there was evidence supporting a need for inpatient rehabilitation, the beneficiary "essentially made no progress in her ADL's [activities of daily living] per FIM [Funtional Independence Measure] scores." The ALJ noted that, "[a]t admission the FIMS score was a 61 and at Discharge was 62," which the ALJ stated was indicative of "a functional gain of 1."

*Beneficiary (#5) V.C.*
*Dates of Service: September 14, 2007 - October 1, 2007*

The beneficiary resided at home with family members. Subsequent to surgery . . . to repair a fractured hip, the beneficiary was referred to the appellant. The beneficiary's medical history was otherwise significant for Parkinson disease, moderate Alzheimer's, dyspnea upon exertion, general incontinence, hypothyroidism, depression/bipolarity, seizure disorder and deep vein thrombosis.

. . . .

The ALJ noted that the Beneficiary's rehabilitation was complicated by two "compounding illnesses: Alzheimer's and Parkinson's disease." Further, the ALJ recounted Dr. R's testimony that dementia hindered the beneficiary's ability to consistently focus on rehabilitation and, thus, impeded her progress with rehabilitation. The ALJ found that the beneficiary had made "minimal progress" in her ADLs because, upon admission, her "FIMS score was a 25," but, upon discharge, it was 23, which represented "a functional loss of 2." Thus, the ALJ denied coverage, finding that the beneficiary's "age and conditions made her an inappropriate candidate" for inpatient rehabilitation services.

In its request for review the appellant contends, generally, that the ALJ's unfavorable decision relative to these beneficiaries "was based on an obviously wrong conclusion of law." The appellant focuses on the ALJ's characterization of the appellant's witness testimony where the ALJ noted that the QIC's "denial of coverage was reviewed and rebutted by Appellants witness, [Dr. R.]. The appellant argues that lack of progress with rehabilitation "is not a basis to determine whether a Medicare beneficiary is entitled to inpatient rehabilitation hospital care. We disagree with the ALJ's decision denying coverage solely for this reason."

. . . .The appellant advances only general arguments. It does not point to any specific medical documentation or other evidence it believes supports a finding contrary to the ALJ's determination that neither Beneficiary L.B. nor Beneficiary V.C. required an

> IRF level of rehabilitative services.
>
> Additionally, the appellant presumes, incorrectly, that the lack of progress "is not a basis to determine whether a Medicare beneficiary is entitled to inpatient rehabilitation hospital care." To the contrary, CMS Ruling 85-2 identifies "significant practical improvement . . . in a reasonable period of time" among its conditions for coverage.
>
> Further, the appellant seems to misinterpret the ALJ's statement that the QIC's denial of coverage was "reviewed and rebutted" by the appellant's witness, Dr. R. The appellant seems to be asserting that the ALJ concluded the doctor's testimony is favorable evidence that, when viewed with the remainder of the evidentiary record, supports coverage for the services provided to Beneficiaries L.B. and V.C. That clearly is not what the ALJ decided. It is unmistakable that the ALJ decided that two of the nineteen claims . . . should remain denied, based upon his consideration of all of the evidence, documentary and testimonial, the appellant proffered.
>
> . . . .
>
> . . . . The Council has reviewed the medical evidence for each beneficiary in the context of the applicable coverage requirements and finds that, in neither case, is coverage for IRF services warranted. In spite of their multiple co-morbidities, neither beneficiary presented with medical conditions requiring the 24-hour availability of a physician. Rather, the surgically-repaired fractures aside, the beneficiaries presented with generally stable, chronic conditions. Moreover, as the ALJ noted, neither beneficiary made significant, if any, progress toward their rehabilitative goals, let alone progress which could have only been achieved through the provision of inpatient rehabilitation services. Rather, as the ALJ found, based upon the evidence of record, neither beneficiary exhibited conditions or needs which could not have been addressed in a less intense rehabilitation setting such as a SNF.
>
> The Council therefore adopts the ALJ's decision.

[Doc. 11-1, pp. 7-10 (internal citations and footnotes omitted; alterations and emphasis in original)]

The Court finds the MAC has misinterpreted the ALJ's decision. The ALJ's opinion as to L.B. reads as follows:

> The ("QIC") denial of coverage was reviewed and rebutted by Appellant's witness, Dr. Ritter. Dr. Ritter narrated the need for Intense Rehab in all facets, which clearly wasn't available at the Skilled Nursing Facility ('SNF') or nursing homes.

> In terms of meeting the Medicare coverage requirements discussed above, the record (as outlined in the findings of fact section) *does not* support Medicare coverage *as the Beneficiary essentially made no progress in her ADL's per FIM Scores.* . . .
> *While the Record does provide evidence of the need for Inpatient Rehab* via the Beneficiary's extensive medical complications, rehab therapy needs, and realistic "return to home goals"; the 89 year-old Beneficiary essentially made no progress in her ADLs per her FIM scores.

[Doc. 11-1, pp. 77-78 (internal citations omitted; first emphasis in original, second and third emphasis added); *see also id.* at 80 (repeating verbatim the same analysis for V.C., with the exception of the final clause, which reads "the 85 year-old Beneficiary essentially made minimal progress in her ADLs per her FIM scores.")] In other words, the ALJ denied coverage *solely* on the basis that the beneficiaries failed to make "significant practical improvement." [*Id.* at 78, 80] Because the ALJ clearly found "the Record does provide evidence of the need for Inpatient Rehab via the Beneficiary's extensive medical complications, Rehab therapy needs, and realistic 'return to home' goals," there was no need for Teche to "point to any specific medical documentation or other evidence it believes supports a finding contrary to the ALJ's determination that neither Beneficiary L.B. nor Beneficiary V.C. required an IRF level of rehabilitative services," as stated by the MAC. [*Id.* at p. 8] Rather, Teche was appealing the ALJ's *sole* basis for his decision - *i.e.*, the beneficiaries did not meet the "significant practical improvement" criterion of Ruling 85-2.

To summarize, the MAC denied coverage to Teche based upon the ALJ's conclusion that neither beneficiary "made significant, if any, progress toward their rehabilitative goals," and based upon the MAC's independent finding that neither beneficiary "presented with medical conditions requiring the 24-hour availability of a physician."

1.   **L.B.**

On May 12, 2010, the ALJ conducted a hearing at which Teche presented witness testimony. [Doc. 11-17, pp. 1-256 ] Maximus and WPS were notified of the hearing but declined to participate. [*Id.* at 13] Dr. Therese Ritter, L.B.'s treating physician at Teche, provided uncontroverted testimony at the hearing that inpatient rehabilitation services were reasonable and necessary for L.B. and could not have been provided at a lower level of care. [*Id.* at 34-39, 58-67, 69-74] Dr. Ritter described L.B.'s medical condition and complications. [*Id.* at 59-63] She additionally testified L.B.'s confusion was thought to be related to recent pain medications, L.B. was having significant pain problems, and L.B. required close physician oversight to manage her pain medications and minimize "the effect on [her] sensorium and [her] physical functioning." [Id. at 61] Dr. Ritter testified L.B.'s medications additionally required management in light of her newly elevated liver function test, renal insufficiency, high cholesterol, and confusion. [*Id.* at 61-62] L.B.'s anemia and low platelet count required close monitoring. [*Id.* at 62-63] L.B.'s COPD and shortness of breath upon exertion required "pulse ox monitoring by nursing and therapy." [*Id.* at 62] L.B. suffered from malnutrition and osteoporosis and was at increased risk for skin problems due to her decreased mobility. [*Id.* at 63] Dr. Ritter further testified L.B. required a multidisciplinary team approach and was provided with "[p]hysical therapy, occupational therapy, nursing, dietician, case management, and myself." [*Id.* at 64] According to Dr. Ritter, the care L.B. received at Teche was complex and not available in a skilled nursing facility or at an outpatient facility. [*Id.* at 65] Finally, Dr. Ritter testified as to the improvement made by L.B. during her treatment at Teche. [*Id.* at 64-65, 72-74]

For the following reasons, this Court finds the decision of the MAC must be vacated. In its decision, the MAC found rehabilitation in an IRF setting was unwarranted, because L.B. did not have

"medical conditions requiring the 24-hour availability of a physician." [*Id.* at 9] The MAC reasoned "surgically-repaired fractures aside, the beneficiar[y] presented with generally stable, chronic conditions." [*Id.*] (This Court notes L.B. did not have surgery.) As previously noted, in its Decision, the MAC set forth L.B.'s secondary medical conditions as "significant for anemia, urinary tract infection, congestive heart failure, hypertension, chronic airway obstruction, gastroesophageal reflux and thrombocytopenia." However, in addition to the foregoing, the ALJ (after a hearing with testimony provided by L.B.'s treating physician) found L.B.'s medical conditions and complications also included pain management, elevated liver function, a urinary tract infection requiring monitoring and treatment, urinary incontinence, COPD and dyspnea on exertion requiring active medical and nursing management, renal insufficiency, hyperkalemia, severe malnutrition, constipation, skin care and osteoporosis. [Doc. 11-1, p. 61] The MAC provided no reasons for excluding from its consideration multiple medical conditions and complications, as submitted into evidence via the uncontroverted testimony of L.B.'s treating physician and accepted by the ALJ. Whether the MAC's omission of these conditions was in error, or intentional, is unknown as no reasons are provided.

The Fifth Circuit has stated in the Social Security disability context[9]:

> The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable

---

[9]While the Fifth Circuit has not decided whether the "treating physician" rule, applicable in the Social Security disability context, applies to Medicare coverage decisions, there is authority in this circuit for same. *See e.g. Breeden v. Weinberger*, 377 F.Supp. 734, 737 (D.C.La. 1974)("while an attending physician's opinion is not a binding conclusion which the Secretary must accept, where there is no direct conflicting evidence, his decision is to be given great weight"; "under the Medicare provisions of the Social Security Act, Congress intended that the responsibility for determining what services the patient requires rests primarily with the treating physician"); *United Medical Healthcare, Inc. v. Department of Health and Human Services*, 889 F.Supp.2d 832, 844 (E.D.La. 2012).

Case 6:13-cv-01120-RFD-CMH Document 23 Filed 09/15/14 Page 13 of 17 PageID #: 2327

> clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence." *Martinez*, 64 F.3d at 176 (citing 20 C.F.R. § 404.1527(d)(2)).
>
> . . .
>
> . . . [T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

*Newton v. Apfel*, 209 F.3d 448, 455-56 (internal citations and quotation marks omitted). In this matter, the MAC has not pointed to *any* evidence inconsistent with Dr. Ritter's testimony, nor to *any* evidence supporting a contrary conclusion, nor to *any* other cause for discounting Dr. Ritter's testimony. The ALJ found the QIC's denial of coverage "was reviewed and rebutted by Appellant's witness, Dr. Ritter," and that "Dr. Ritter narrated the need for Intense Rehab in all facets, which clearly wasn't available at the Skilled Nursing Facility ("SNF") or nursing homes." [Doc. 11-1, p. 77] After a review of the record, this Court finds no reason for a contrary conclusion, and is unable to discern the MAC's basis for same.

The second reason the MAC denied reimbursement was L.B. did not make "significant, if any, progress toward [her] rehabilitative goals, let alone progress which could have only been achieved through the provision of inpatient rehabilitation services." [*Id.* at 9] The Court finds the MAC's statement to be an incorrect application of the "significant practical improvement" criterion. Again, with regard to "significant practical improvement," CMS has provided the following guidance:

> Hospitalization after the initial assessment is covered only in those cases *where the initial assessment results in a conclusion by the rehabilitation team that a significant practical improvement **can be expected** in a reasonable period of time.* It is not necessary that there be an expectation of complete independence in the activities of daily living, but there must be a *reasonable expectation of improvement* that will be

of practical value to the patient, measured against his condition at the start of the rehabilitation program.

50 FR 31040-01, as corrected by 50 FR 32643 (emphasis added); *see also* MBPM at § 110.4; WPS LCD L19890. Thus, as to this requirement, after the initial assessment, if the rehabilitation team concludes "a significant practical improvement can be expected in a reasonable period of time" (and all other criteria are met), hospitalization is covered by Medicare. However, the MAC states the requirement as: "CMS Ruling 85-2 identifies 'significant practical improvement . . . in a reasonable period of time' among its conditions for coverage." [Doc. 11-1, pp. 8, 54 (omission in original)] By omitting the phrase "can be expected" in its recitation of the significant practical improvement criterion, the MAC has essentially rewritten the provision to *require* (rather than "expect") "significant practical improvement" be attained. As argued by Teche, "Requiring providers to ensure that a beneficiary will achieve significant practical improvement in a reasonable period of time as a condition for coverage is not only impossible, but inconsistent with the plain language of the regulations and the plain language of the Secretary's interpretations of those regulations." [Doc. 14-1, p. 13] This Court agrees. Furthermore, the MAC can hardly be said to be wed to this position, as it (as recently as 2012) took the exact opposite position (and was affirmed) in *United Medical Healthcare, Inc. v. Department of Health and Human Services*, 889 F.Supp.2d 832, 855 (E.D.La. 2012)(Where IRF pointed to "considerable progress made by the beneficiaries," the MAC countered "[w]hether or not progress was made through rehabilitation is not the determinative factor for finding coverage for IRF services.")

Because the Secretary failed to provide any reasons for declining to consider all of L.B.'s medical conditions and complications, rejected the uncontroverted opinions of L.B.'s treating

physician without a showing of good cause, and applied an incorrect application of the "significant practical improvement" criterion for IRF treatment, this Court VACATES the Secretary's decision with regard to beneficiary L.B. and REMANDS this case for further consideration consistent with this opinion.

2.  V.C.

Again, on May 12, 2010, the ALJ conducted a hearing at which Teche presented witness testimony. [Doc. 11-17, pp. 1-256 ] Maximus and WPS were notified of the hearing but declined to participate. [*Id.* at 13] Dr. Therese Ritter, V.C.'s treating physician at Teche, provided uncontroverted testimony at the hearing that inpatient rehabilitation services were reasonable and necessary for V.C. and could not have been provided at a lower level of care. [*Id.* at 90-99] Dr. Ritter described V.C.'s medical conditions and complications. [*Id.* at 90-94] Dr. Ritter additionally testified V.C.'s compounding multiple medical issues (particularly her poorly controlled postoperative pain, Parkinsonism, and dementia) required close supervision to ensure her safety while undergoing physical rehabilitation. [*Id.* at 92-93] Dr. Ritter testified V.C. was provided close nutritional support and monitoring by Dr. Ritter, nursing, and a dietician. [*Id.* at 93] V.C.'s blood counts had to be closely monitored in light of her anemia and deep venous thrombosis. [*Id.*] V.C.'s history of dyspnea on exertion required monitoring of her pulse oximetry. [*Id.* at 94] Dr. Ritter further testified at the time of her admission, the rehabilitation team had a reasonable expectation of improvement that would be of practical value to V.C. [*Id.*] Finally, Dr. Ritter addressed the improvement made by V.C. while at Teche, and noted V.C. was able to be discharged to her home, rather than a nursing home, following her treatment. [*Id.* at 94-95]

For the following reasons, the Court finds the decision of the MAC must be vacated. In its Decision, the MAC denied coverage for V.C., finding IRF treatment was unwarranted because V.C.'s condition did not require "the 24-hour availability of a physician." [Doc. 11-1, p.9] In addition to those medical conditions and complications identified by the MAC (Parkinson disease, moderate Alzheimer's, dyspnea upon exertion, general incontinence, hypothyroidism, depression/bipolarity, seizure disorder and deep vein thrombosis), the ALJ found (after a hearing with testimonial evidence by V.C.'s treating physician) V.C. admitted with pain management issues, malnutrition, anemia, urinary tract infection, history of coronary artery disease, and atrial fibrillation. [Doc. 11-1, p. 63] Again, the MAC provided no reasons for excluding from its consideration multiple medical conditions and complications, as submitted into evidence via the uncontroverted testimony of L.B.'s treating physician and accepted by the ALJ. The MAC has pointed to no evidence inconsistent with Dr. Ritter's testimony, no evidence supporting a contrary conclusion, nor any other cause for discounting Dr. Ritter's testimony.

The MAC additionally denied coverage, because V.C. did not make significant progress toward her rehabilitative goals. [Doc. 11-1, p.9] For those reasons previously provided, this Court finds the MAC incorrectly applied the "significant practical improvement" criterion.

Because the Secretary failed to provide any reasons for declining to consider all of V.C.'s medical conditions and complications, rejected the uncontroverted opinions of V.C.'s treating physician without a showing of good cause, and applied an incorrect application of the "significant practical improvement" criterion for IRF treatment, this Court VACATES the Secretary's decision with regard to V.C. and REMANDS this case for further consideration consistent with this opinion.

## V. Conclusion

For the reasons provided in this Ruling, plaintiff's motion for summary judgment [Doc. 14] is GRANTED IN PART, defendant's motion for summary judgment [Doc. 18] is DENIED, and the decision of the Secretary is VACATED and REMANDED to the court below for further consideration consistent with this opinion.

THUS DONE AND SIGNED in Chambers, Lafayette, Louisiana, this 15th day of September, 2014.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE